IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jason Kelly, ) | C/A No. 0:15-2157-TMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| South Carolina Department of Corrections; ) | |
| James Tollison, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Jason Kelly, a state prisoner who is represented by counsel, filed this action against the named defendants pursuant to 42 U.S.C. § 1983.[1]  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment.  (ECF No. 43.)  Kelly filed a response in opposition to the defendants' motion.  (ECF No. 45.)   Having reviewed the parties' submissions and the applicable law, the court concludes that the defendants' motion should be denied.

## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to Kelly, to the extent they find support in the record.  Kelly alleges that, on or about April 1, 2013, while housed at Turbeville Correctional Institution, he slipped and fell in his cell, knocking him unconscious.  Kelly's cellmate alerted and informed Defendant James Tollison, a correctional officer, that Kelly had fallen and was non-responsive.  Tollison verbally called to Kelly, but Kelly did not respond.  Tollison then deployed approximately 63 grams of chemical munitions.  According

---

[1] The defendants removed this action from the Clarendon County Court of Common Pleas.



to Tollison, Kelly then "stirred but did not arise," and Tollison "phoned main control to alert the First Responders." (Tollison Aff. ¶ 7, ECF No. 43-3 at 1.) Two other correctional officers arrived and assisted Tollison in transporting Kelly to the SMU medical area, where Kelly was assessed by two nurses and was given a shower. (Id. ¶¶ 8-9, ECF No. 43-3 at 2.) Kelly was returned to his cell later that evening. (Id. ¶ 10.)

Kelly alleges that Defendant Tollison, in his individual capacity, used excessive force against Kelly in violation of the Eighth Amendment of the United States Constitution. Kelly also brings claims pursuant to the South Carolina Tort Claims Act against Defendant South Carolina Department of Corrections ("SCDC"), specifically alleging a common law claim of battery, and that SCDC failed to properly hire, supervise, and/or retain Defendant Tollison. (See generally Compl., ECF No. 1-1.)

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

B.     **Defendants' Motion for Summary Judgment**

   1.     **Eighth Amendment—Excessive Force**

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his excessive force claim under the Eighth Amendment, Kelly must demonstrate: (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state



of mind." Wilson v. Seiter, 501 U.S. 294 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).

The "core judicial inquiry" in an excessive force claim under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment

of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting. See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984). In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution. Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner. Bailey, 736 F.2d at 969-70. The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat. Id. Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." Id. at 969. Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Williams, 77 F.3d at 763 (internal quotations marks and citation omitted).

Kelly alleges that Defendant Tollison used excessive force when he sprayed Kelly with chemical munitions while Kelly was unconscious. (See Compl., ECF No. 1 at 6.) In support of their motion for summary judgment, the defendants have provided incident reports, affidavit testimony from Defendant Tollison, and Kelly's medical records.

The defendants argue that, when Kelly did not respond to Tollison's verbal communications, Tollison was faced with determining whether Kelly "was unconscious and/or in need of emergent medical care," or whether Kelly "was merely pretending to be unconscious in an attempt to trick Tollison into opening the SMU cell door without sufficient personnel." (Defs.'s Mem. Supp. Summ. J., ECF No. 43-1 at 6.) Additionally, the defendants argue that summoning additional personnel to open Kelly's cell would have taken ten or fifteen minutes, and that if Kelly "was in an emergent medical condition, he could suffer significant injury or death from the delay." (Id. at 5.) The defendants argue that, accordingly, Tollison's use of chemical munitions was necessary.

Applying the Whitley factors to the facts viewed in the light most favorable to Kelly, the court concludes that summary judgment is unwarranted. The undisputed evidence in the record shows that Tollison was informed by Kelly's roommate that Kelly had fallen and was unresponsive and that Kelly did not respond to Tollison's verbal calls. It is undisputed that Kelly did not pose an immediate physical threat to Tollison—he was in his locked cell—and significantly, on this record, no facts indicate that his behavior presented any threat to Tollison, to the order of the SMU, or to the safety of other officers and inmates. See Whitley, 475 U.S. at 321; cf. Bailey, 736 F.2d at 969-70 (finding that prison officials may use mace to compel the obedience of a recalcitrant prisoner); Brown v. Eagleton, Civil Action No. 4:14-cv-357-BHH, 2015 WL 5781504 (D.S.C. 2015) (rejecting the argument that "prison officials may not use mace or chemical munitions on *disruptive* prisoners



who are locked in a cell") (emphasis added).  Accordingly, a reasonable jury could conclude that there was no need for the application of force at the time that Tollison applied it.  Because the facts viewed in the light most favorable to Kelly permit the conclusion that no force was necessary at all, the Whitley factor that considers the relationship between the need for force and the amount of force used favors Kelly as well.

Examining the extent of the threat posed by Kelly to the safety of the staff and other inmates as reasonably perceived by Tollison also weighs in Kelly's favor.  Although the defendants appear to argue that Tollison's and others' safety would be threatened if Tollison had opened Kelly's cell door and Kelly had pretended to be unconscious, the defendants provide no evidence—such as a history of violent disciplinary infractions by Kelly—to support such a speculative conclusion.  In fact, the record is devoid of any information whatsoever regarding Kelly's behavior during his incarceration at SCDC.  Additionally, the defendants' argument that summoning additional personnel to safely open the cell door would have essentially taken too long if Kelly had needed immediate medical care is belied by the undisputed evidence in the record that, when Kelly remained unresponsive after Tollison administered chemical munitions, Tollison appears to have done just that—two corrections officers were notified and assisted Tollison in transporting Kelly to the medical department.  (Tollison Aff. ¶¶ 7-8, ECF No. 43-3 at 1-2.)  As discussed above, the record is undisputed that Kelly did nothing threatening during the incident.  Accordingly, a reasonable jury could conclude that Tollison's perception of the threat posed by Kelly was unreasonable.

As to the efforts taken to temper the severity of the force used, the defendants argue that Tollison, in deploying chemical munitions, used the "least amount of force available." (Defs.' Mem. Supp. Summ. J., ECF No. 43-1 at 6.)  Specifically, the defendants appear to argue that the severity



of the force was tempered in that Kelly, by being unconscious, would not experience the full effects of the chemical munitions. (Id.) The defendants provide no evidence to support this medical conclusion. The Fourth Circuit has held that, in confrontations with an inmate, "a limited use of mace constitutes a relatively mild response compared to other forms of force." Williams, 77 F.3d at 763. However, given that no amount of chemical munitions was needed to force compliance from an unconscious inmate, this factor under Whitley also weighs in Kelly's favor.

Examining the extent of injury actually inflicted is the only Whitley factor that may weigh in the defendants' favor. Kelly alleges only unspecified "physical and emotional harm" as a result of Tollison's actions. (Compl. ¶ 29, ECF No. 1-1 at 7.) It appears from the medical records provided by the defendants in support of their motion for summary judgment that Kelly did not complain of any residual effects from the chemical munitions on the days he received follow-up treatment for his head injury; however, the court notes that the medical records are incomplete as to Kelly's subjective complaints and any treatment received on the day of the incident. (See generally Med. Rec., ECF No. 43-2.) As discussed in Wilkins, sustaining a "significant injury" is not a requirement for stating an excessive force claim and is but one factor to consider when examining whether the use of force was necessary. Wilkins, 559 U.S. at 37. Additionally, the objective component of an excessive force claim examines the nature of the force—specifically, whether it was nontrivial—rather than the severity of any injuries inflicted. Id. at 39. As the record before the court does not contain any medical records regarding Kelly's treatment immediately following his being sprayed with chemical munitions, the court cannot say that the nature of the force used by Tollison was nontrivial. See Danley v. Allen, 540 F.3d 1298, 1309 (11th Cir. 2008) (noting that the effects inherent in most, if not all, uses of pepper spray include "intense pain, a burning sensation that



causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx") (internal quotation marks omitted), overruled on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).

Accordingly, applying both the Whitley and Bailey factors and examining the totality of the undisputed circumstances, the court concludes that a reasonable jury could find that Tollison's use of chemical munitions was not commensurate with the reasonably perceived threat posed by an unconscious inmate, but rather was used maliciously and sadistically to cause physical harm. See Wilkins, 559 U.S. at 37; see also Whitley, 475 U.S. at 321-22; Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

### 2. South Carolina State Tort Claims

As an initial matter, the defendants argue that any claims against SCDC should be dismissed because SCDC does not consent to suit in federal court. However, by voluntarily removing this case to federal court, SCDC waived its immunity under the Eleventh Amendment from suit. Lapides v. Bd. of Regents, 535 U.S. 613, 622 (2002) (holding that a State that voluntary invokes the jurisdiction of the federal court waives immunity from claims in which it has consented to suit in its own courts).

As stated above, Kelly alleges claims pursuant to the South Carolina Tort Claims Act against SCDC, and specifically alleges a common law claim of battery, and that SCDC failed to properly hire, supervise, and/or retain Defendant Tollison. The South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 et seq., is the exclusive remedy for any tort committed by an employee of a governmental entity. S.C. Code Ann. § 15-78-70. The Act provides that the State, its agencies, political subdivisions, and other governmental entities are "liable for their torts in the same manner and to the same extent as a private individual under like circumstances," subject to certain limitations



and exemptions provided in the Act. S.C. Code Ann. § 15-78-40. "The governmental entity asserting the Act as an affirmative defense bears the burden of establishing a limitation upon liability or an exception to the waiver of immunity." Hawkins v. City of Greenville, 594 S.E.2d 557, 563 (S.C. Ct. App. 2004).

The defendants have failed to show there is no genuine dispute of material fact and that SCDC is entitled to summary judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56. Additionally, they have failed to meet their burden as required by the Act. Hawkins, 594 S.E.2d at 563. The defendants, in their memorandum in support of summary judgment, summarily state that SCDC is entitled to immunity because Tollison "was exercising judgment within his discretion as a part of his job when he administered chemical munitions to control Plaintiff." (Defs.' Mem. Supp. Summ. J., ECF No. 43-1 at 8.) The defendants do not individually analyze or address the state law claims or address how the Act limits or bars liability as to these claims. Although the defendants cite to a few sections of the Act "among others" in claiming immunity (id.), they do not provide any analysis as to how any section of the Act immunizes SCDC from Kelly's claims. (Id.) Such bare assertions are insufficient to show that there is no genuine dispute as to any material fact and that SCDC is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 328 (1986) ("It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case."). As the defendants have failed to meet their burden to show that SCDC is entitled to immunity under the Act, SCDC is, accordingly, not entitled to summary judgment on Kelly's state law claims.

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the defendants' motion for summary judgment be denied. (ECF No. 43.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 27, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).